**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
NISHA DESAI

                         Plaintiff,

             -against-

KERRYN GERETY, MATTHEW COOKE, and
LAZOKA, INC.

                        Defendant.
-------------------------------------------------------------X

                                      **COMPLAINT**

                            **Jury Trial Demanded**

        Plaintiff Nisha Desai ("Desai" or the "Plaintiff"), by and through her attorneys, The Roth Law Firm PLLC, hereby submit this Complaint against Defendant Kerryn Gerety ("Gerety"), Matthew Cooke ("Cooke"), and Lazoka, Inc. ("Lazoka" or the "Company"), and (collectively the "Defendants"), as follows:

**PARTIES**

        1.      Plaintiff Nisha Desai is an individual residing in New York.

        2.      Upon information and belief, Defendant Kerryn Gerety is an individual residing in the Commonwealth of Massachusetts that transacted business in connection with this dispute in the City, County and State of New York.

        3.      Upon information and belief, Defendant Matthew Cooke is an individual residing in the State of Tennessee that transacted business in connection with this dispute in the City, County and State of New York.

        4.      Upon information and belief, Defendant Lazoka, Inc. is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Massachusetts.  Lazoka has transacted business in connection with this dispute in the City, County and State of New York.

5.     Gerety was the founder of Lazoka and serves as its CEO, President, Treasurer, and Secretary and serves on its Board of Directors.

6.     Cooke has served as the COO of Lazoka.

### SUBJECT MATTER JURISDICTION, VENUE AND LEGAL FEES

7.     This action arises under, among other things, Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 thereunder ("Section 10(b)").  Plaintiff seeks to recover damages Plaintiff sustained as a result of the Defendants' conduct, the costs of this suit, interest, and reasonable attorneys' fees. The court's jurisdiction is invoked under 28 U.S.C.A. §§ 1331, 1332, and 1337; 18 U.S.C.A. §§ 1964(a) and 1964(c).

8.     Venue is proper in this District as a substantial part of the events or omissions giving rise to the claim occurred in New York City.  Defendants met with and solicited multiple prospective investors in the Southern District of New York and offers and sales of securities took place in this District.  Plaintiff maintains offices in this District.

9.     On September 23, 2018, Plaintiff entered into a Convertible Promissory Note and Common Stock Purchase Agreement (the "Debt and Equity Securities Agreement" or "Agreement").  Section 4.11 of the Agreement provides that: "[i]f action is instituted to collect on this Note, the Company promises to pay all costs and expenses, including reasonable attorney's fees, incurred in connection with such action."

### UNDERLYING FACTS

A.     **The Offering Was Fraudulent**

10.     Gerety and Cooke have worked together for over 10 years.

2

11.     Gerety founded Lazoka in 2015 as a technology company and has served as CEO since then.

12.     Cooke worked as Chief Operating Officer for Lazoka.

13.     Gerety confirmed Cooke was her "right hand COO," and Cooke confirmed he worked with CEO Gerety in the COO function for her and Lazoka.

14.     Cooke worked on multiple investor solicitations for Lazoka, multiple securities agreements for Lazoka, Lazoka financials, Lazoka valuation analysis, management of the Company, and primary management of the Company in Gerety's absence.

15.     Indicative of Cooke's long-term and material management role with Lazoka, Cooke earned a material equity position in the Company (greater than 5% fully-diluted equity) *without* a commensurate financial investment.

16.     In connection with an investment that forms the basis of this action, Defendants solicited Plaintiff to enter into the Debt and Equity Securities Agreement and to invest $25,000 in connection therewith.

17.     In soliciting Plaintiff as equity and debt holder and in proffering securities agreements to Plaintiff, Gerety and Lazoka made numerous falsifications and/or misleading statements in order to induce investments in Lazoka, including but not limited to: (i) Lazoka had received an "acquisition offer from PE firm for $6M" in October 2017 for an "acqui-hire" deal and Lazoka, Inc's add on to a wholesale food business; (ii) WilmerHale continued to serve as securities and transaction counsel; (iii) the "acquisition value will be much higher" but Gerety "want[s] to be fair and attract investors" so was pricing at only $6 million; (iv) at the time of the Agreement, Lazoka was valued at $6 million and that was a "conservative" number; (v) representing "Lazoka is currently in late-stage acquisition conversations with multiple main-

stream consumer retail chains for our technology + strategic insight"; (vi) Lazoka was in acquisition conversations to four different entities in October 2018; (vii) sophisticated professionals think Lazoka is easily valued at $10 million; (viii) stating "[w]e have an investor in Boston interested in a potential board seat + cutting a $1M check"; (xi) the Company was already charging a $295/month software-as-a-service subscription fee for farms, with several hundred farms on the platform, and was collecting a 25% transaction fee on the marketplace side, as "all customers pay"; (x) the Company's technology was fully built and "immediately scalable"; (xi) false and/or misleading statements regarding management Gerety and Cooke's qualifications, prior work history, and outside business interests; (x) misrepresentations concerning the Company's existing paying customers, recurring revenue, being in good standing, authorized corporate actions, tax filings, existing investor commitments, the acquisition and operating plan and valuation.

18.     Importantly, none of Gerety, Cooke, or Lazoka's representations made to investors were accompanied by any risk disclosures required to be provided to potential investors or to qualify management's representations.

19.     As a matter of securities law, Gerety, Cooke, and Lazoka were required to disclose all "material information" (meaning, information that an investor would consider important in the evaluation of an investment decision) yet the current situation and management's actions give reason to believe that Gerety, Cooke, and Lazoka not only misrepresented material information, but also failed to disclose other material information in connection with its securities offerings.

20.     Plaintiff reasonably relied on the representations in written materials and due diligence meetings with Lazoka CEO Kerryn Gerety and COO Matthew Cooke in deciding to enter into securities agreements and business agreements with Gerety and Lazoka.

21.     Based on these material misrepresentations made by Gerety, Cooke, and Lazoka, and the omissions, Plaintiff entered into: (i) a Debt and Equity Securities Agreement; and (ii) a Consulting Agreement, dated October 2018.

22.     Notwithstanding the obligations contained therein, Defendants have since been holding Plaintiff's cash and entitlements to remuneration.

23.     The Debt and Equity Securities Agreement provided that Plaintiff's capital allocation to the Company would be made "against the issuance and delivery by the Company of a convertible promissory note…. and the number of shares of the Company's common stock set forth next to the Purchasers name on the Schedule of Purchasers" which, under the written Agreement, were to be delivered on September 23, 2018, termed the Effective Date.

24.     Section "2.3 Delivery" of the Debt and Equity Securities Agreement provided that: "[a]t the Closing and each Additional Closing (i) each Purchaser shall deliver to the Company a check or wire transfer funds in the amount of such Purchaser's Loan Amount; and (ii) the Company shall issue and deliver to each Purchaser a Note in favor of such Purchaser payable in the principal amount of such Purchaser's Loan Amount and a certificate for the Purchaser's Shares."

25.     Gerety breached the Debt and Equity Securities Agreement by repeatedly failing and refusing to deliver the Note and shares to Plaintiff.

26.     Importantly, notwithstanding the fact that the funds were to be placed into Lazoka and pursuant thereto, Gerety sent an email to Plaintiff instructing Plaintiff to wire monies to a Lazoka bank account.  Plaintiff subsequently learned that said monies were wired into Gerety's personal bank account and not that of the Company.

27.     Thus, remarkably, Gerety siphoned investor and Lazoka funds into her personal bank account, a material misrepresentation of the use of proceeds of the investment.

28.     Despite soliciting Plaintiff as investor, proffering securities agreements, and requesting and accepting our client's funds via wire in 2018, to date and as of 2021, Gerety, Cooke, and Lazoka have repeatedly failed and refused to provide a countersigned Agreement to Plaintiff.

29.     Gerety and Cooke also materially misrepresented their legal authority to enter into securities transactions for Lazoka. That is, under Section 3.1 of the Agreement, the Company represented that: "[t]he Company has the requisite corporate power to own and operate its properties and assets and to carry on its business as now conducted and as proposed to be conducted" and "[t]he Company is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware." Then, in Section 3.2, the Company represented that: "[t]he Company has all requisite corporate power to execute and deliver this Agreement, to issue each Note (collectively, the "Loan Documents") and the Shares and to carry out and perform its obligations under the terms of the Loan Documents."

30.     However, on May 14, 2019, Defendants' counsel admitted to Plaintiff in an email that those representations by Gerety and Cooke were false.

31.     Therein, Defendants' counsel wrote to Plaintiff in relevant part: "Nisha [Desai]– in getting this sorted out I have discovered that Wilmer Hale never filed an amended charter with the Delaware Secretary of State to increase the authorized stock of Lazoka, Inc.  I do not know why the charter was never amended.  It still sets at the original 1,000 shares. … the company could not have issued shares to you previously because it did not have authorized capital."

32.     Simply, Defendants Gerety, Cooke, and Lazoka solicited and accepted Plaintiff' funds based on false representations of fact contained in the Debt and Equity Securities Agreement.

33.     Additionally, under Section 3.1 of the Agreement, the Company represented that: "[t]he Company is a corporation duly organized, validly existing and in good standing under the

laws of the State of Delaware." However, Delaware Division of Corporations records state that the Company's actual status was that of a Voided Delaware Corporation, which would confirm the Company was not in good standing under the laws of the State of Delaware at the time Gerety made securities representations. Again, Gerety's representations were false.

34. The Delaware Division of Corporations stated that Lazoka Inc. has a status of "Delinquent" and "Tax Due," despite Gerety informing Desai that the Company had filed and was current on its tax filings.

### B. Defendant's Fraudulently Induced Plaintiff To Enter Into the Consulting Agreement

35. After Gerety induced Plaintiff to wire $25,000 into Gerety's personal bank account and to accept 0.125% fully-diluted equity in the Company which Gerety stated was worth $7,500, Gerety and Cooke then induced Plaintiff to agree to provide business consulting services in early October 2018.

36. As payment for such business consulting services, Gerety and Cooke agreed to provide Plaintiff with additional common equity shares in Lazoka, which Gerety stated equated to 0.5% fully-diluted equity in the Company and which Gerety stated represented $30,000 in value at the time. Gerety again confirmed that the company's $6,000,000 value was conservative and sophisticated professionals and advisors stated Lazoka is easily valued at $10 million.

37. Because Lazoka's own counsel admitted to Desai in May 2019 that Lazoka was logistically incapable of providing any such shares in October 2018, and Gerety's representations of the stated valuation of the Company were either false or misleading, Gerety and Cooke's actions constitute additional material misrepresentations of fact, constituting additional violations of the federal securities laws.

38.     In addition, during the due diligence and negotiation period leading up to the October 27, 2018 Consulting Agreement, Gerety admitted that she and Cooke "discussed" that "no financials or earth shattering insight" would be shared in advance of this securities agreement, as if no further material information in connection with these securities offerings existed or required disclosure.  As a matter of securities law, Gerety, Cooke, and Lazoka were required to disclose all "material information" (meaning, information that an investor would consider important in the evaluation of an investment decision) yet the current situation and management's actions give reason to believe that Gerety, Cooke, and Lazoka not only misrepresented material information, but also failed to disclose other material information in connection with its securities offerings. Thus, Gerety and Cooke conspired then to withhold material information in connection with the Company's securities offerings.

39.     In October 2018, Gerety addressed the consulting agreement, writing to Desai: "As for the arrangement: .5 points [of common full-diluted equity] is the intended compensation for a presentation worthy competitive analysis/Porter 5 Forces document (I understand right now it's potentially going to come over initially in draft format)."

40.     During a telephone conversation the morning of October 27, 2018, Gerety nagai confirmed to Desai the agreement and the nature and scope of the Porter's 5 Forces work.  Gerety confirmed that she and Cooke constructed these terms and both agreed to this securities transaction.

41.     After completing several weeks of research, in November 2018, Desai wrote to Gerety: "please see attached the final draft of the Porter's 5 Forces/ Strategic Analysis for Lazoka. Please let me know if you have any questions" and attached the Porter's 5 Forces analysis pursuant to the agreement.

42.     In December 2018, when Plaintiff again demanded the securities certificates to which she was contractually entitled, Gerety wrote she was "get[ting] with Matt [Cooke] re: papering" both the Debt and Equity Securities Agreement and the equity certificates pursuant to the Consulting Agreement.

43.     In January 2019, regarding this business consulting agreement, Gerety again confirmed to Desai "You will be compensated for the written analysis and will receive documentation."

44.     In January 2019, regarding the business consulting agreement, Desai emailed Gerety: "Kerryn -- the write-up was delivered per the agreement; please let me know a specific date regarding the documentation."

45.     From November 2018 through present, Gerety and Cooke repeatedly refused to deliver Plaintiff' securities documentation pursuant to the work performed under this business consulting agreement.

46.     In May 2019, as a result of Gerety and Cooke's misrepresentations, Desai was forced to take up outstanding matters with Lazoka's new counsel, Greenberg Traurig.

47.     In June 2019, Lazoka's counsel at Greenberg Traurig confirmed that Plaintiff Desai was entitled to the .5% equity compensation for work performed; Gerety was copied on Lazoka counsel's numerous confirming correspondences with Desai.

48.     In June 2019, Lazoka's counsel sent Desai the "Lazoka Capitalization Table"; this document lists Plaintiff Desai as entitled to .5% fully-diluted common equity.  Gerety was copied on this correspondence.

49.     In fact, Lazoka counsel wrote that the Lazoka Capitalization Table was "constructed from the records that [Gerety] provided to [Lazoka counsel]" and from discussions with Gerety. Gerety was copied on this correspondence.

50.     In June 2019, Lazoka counsel Greenberg Traurig wrote to Desai: "we will create and deliver the certificates representing your shares for the amount specified in the cap table." This amount reflected the .5% fully-diluted common equity per the Consulting Agreement.  Gerety was copied on said correspondence.

51.     In July 2019, Desai spoke to Cooke regarding Lazoka and the Lazoka securities agreements.  Cooke confirmed he regularly speaks with Gerety regarding Lazoka and would follow up with her on the matters.

52.     Upon information and belief, Lazoka counsel never delivered certificates to Plaintiff because Gerety as CEO had not paid outstanding bills owed to counsel's law firm, in part because Gerety had siphoned investor funds for her personal use.

53.     Despite the clear record of this agreement and understanding by parties of the required payment, Gerety and Lazoka began to deny the existence of any such arrangement.

54.     Further, as admitted by Lazoka counsel at Greenberg Traurig, although Lazoka common equity shares were intended to serve as a form of payment for consulting services, the security transaction could not, as a matter of fact or law, be considered a legitimate payment because the Lazoka Charter was never amended and Gerety, Cooke, and "the company could not have issued shares to [Desai] previously because it did not have authorized capital."  With respect to the October 2018 agreement, Gerety and Cooke's actions constitute an additional violation of the anti-fraud provisions of the securities laws.

55.     Had Plaintiff known that Defendants misrepresented the $6,000,000 current valuation in October 2018, misrepresented the company's authorized capitalization, and would not produce securities certificates, Plaintiff would not have agreed to accept payment for advisory services in the form of stock.

**C. Defendants Refuse Shareholder's Properly Presented Books & Records Demands**

56.     As equity stockholder, Plaintiff is entitled to and has attempted to claim statutory inspection rights under Delaware General Corporation Law 220.

57.     From December 2018 until present, Plaintiff repeatedly wrote and spoke to Gerety, Lazoka, and Lazoka's counsel that Plaintiff, as shareholder and lender, remained extremely concerned regarding seeming egregious mismanagement and looting of the Company's assets with Gerety acting as CEO, Director of the Board, and potentially an alter ego of Lazoka, given her siphoning of Company and investor funds into her personal bank account.

58.     Since December 2018, Plaintiff has communicated concerns and information requests to Defendants.

59.     For example, in April 2019, Desai wrote to Gerety: "for various reasons communicated today and previously, I remain concerned about the management of Lazoka and the exercise of fiduciary obligations.  As stated on various occasions -- including but not limited to Sept. 23. 2018; Sept. 28, 2018; Nov. 2, 2018; Dec. 15, 2018; Dec. 16, 2018; Dec. 29, 2018;  Jan. 23 and 24, 2019; Mar. 29, 2019; Apr. 3, 2019; Apr. 5, 2019; Apr. 10, 2019; Apr. 15, 2019; and Apr. 23, 2019 -- I have yet to receive from you i) the Lazoka-countersigned Note and Stock Purchase Agreement dated Sept. 23 2018 related to my concurrent cash investment, ii) the stock certificates contractually required under Section 2.3 of that Sept. 23, 2018 Agreement, or iii) the

stock certificates related to the Nov. 8, 2018 consulting work performed.  None of the excuses you have previously provided release you from your obligations under contract law and securities law."

60.     Additionally, in August 2019, Plaintiff as shareholder, wrote to Gerety: "these matters have been outstanding since September 2018: I've given you nearly a year, and you have failed to demonstrate any semblance of sound governance or capable management, failed repeatedly to meet commitments which you set and which are legally required, not provided any investor updates as promised, and over-committed and under-delivered on numerous occasions without adequate or timely remediation.  You've consistently proven yourself to be of untrustworthy character, poor judgment, and likely in breach of fiduciary duty."

61.     Again, in February 2020, Desai wrote to Gerety: "I am concerned about potential mismanagement, corporate waste, inappropriate use of company funds, and management abuse, among other items, including by you as a director and officer of Lazoka."

62.     Then in March 2020, Desai wrote to Gerety: "I am concerned that you have embezzled funds, committed securities fraud and wire fraud, engaged in illegal self-dealing with lender funds, engaged in bad faith negotiations, and lied about business matters to intentionally mislead prospective investors, among other items."

63.     In May 2020, Desai wrote to Gerety and Lazoka counsel: "As a common equity holder, I am entitled to and have claimed inspection rights under Delaware General Corporation Law 220 to review books and records and other specified documents pertinent in order to investigate potential corporate wrongdoing."

64.     These concerns relate to Plaintiff's belief that her investment proceeds under the Agreement were directed to be sent to Gerety's personal bank account and that Gerety has engaged in other conflicted conduct in violation of Gerety's fiduciary duties to the Company (including a

breach of the duty of loyalty) by: (i) using investor funds to pay for personal expenses, including vacations to Hawaii and Spain; (ii) admitting to refusing capital offers from other venture capital firms with insignificant business-related rationale or minority shareholder considerations; (iii) failing to inform shareholders of information that is important in evaluating the Company including a failure and refusal to provide a single meaningful update on the Company since the time of Plaintiff's original investment in September 2018; (iv) taking down the e-commerce Company's website without warning to shareholders or providing any rationale for doing so, and (v) admitting to working during normal business hours on "a side company [Gerety] started with 2 guy friends" despite Gerety representing to Plaintiff that Gerety was working exclusively for Lazoka, Inc.

65.     Upon information and belief, the "side company [Gerety] started with 2 guy friends" is Oak Street Associates LLC, a new corporation formed by Cooke and Gerety, and a conduit for their investor manipulation and to siphon resources and duties owed to Plaintiff as a Lazoka shareholder and creditor.

66.     Desai has repeatedly asked for the Company and its counsel to provide her with its books and records for review and in connection with her investigation of potential mismanagement, waste, and fiduciary wrongdoing by Gerety, Cooke, and Lazoka, Inc.

67.     As Plaintiff is a common equity shareholder, and demand has repeatedly been made that the Company provide for inspection all such requested documents pursuant to Section 220 of the Delaware General Corporation Law.  In light of concerns communicated to Defendants, Plaintiff made formal request and demanded inspection of the board materials; documents identifying the company's bank accounts and related party accounts; and documents identifying

all revenues, expenses, salaries, tax filings, contracts, payments, claims, and uses of all investor proceeds.  To date, however, no such documents have been provided.

68.     Since the date of Plaintiff's investment, in her capacity as common equity shareholder, Plaintiff continuously requested information from Gerety and Lazoka regarding Lazoka's business, use of funds, executive compensation, financials, and countersigned investment certificates, among other items.

69.     Gerety had committed to sending investor updates by the week of January 28, 2019, yet she has failed to produce such investor updates.

70.     In February 2020, Gerety wrote to Desai that Gerety "will also be offering quarterly group conference calls moving forward to keep all investors more adequately in the loop." Gerety was engaging in yet another delay scheme here and another investor manipulation, as no such investor calls were offered.

71.     Defenden's have or should have been subject to document preservation in advance of litigation since 2019.

72.     Upon information and belief, a full accounting of Lazoka's business records will reveal an outrageous misuse and diversion of investor funds and breach of the duty of loyalty.

### AS AND FOR A FIRST CLAIM FOR RELIEF AGAINST
### GERETY AND LAZOKA
### FOR VIOLATION OF § 10(b) OF THE SECURITIES ACT OF 1934
### AND RULE 10b-5 PROMULGATED THEREUNDER

73.     Plaintiff repeat and re-allege each of the above paragraphs as if fully set forth herein in their entirety.

74.     The aforementioned material misrepresentations and omissions contained in the Debt and Equity Securities Agreement and in the due diligence discussions, on which Plaintiff relied to their detriment, constitute fraudulent and deceptive acts and practices by Defendants

Lazoka and Gerety, committed knowingly, intentionally and/or grossly negligently and with a deliberate and/or reckless indifference to making an accurate, fair, balanced and non-misleading presentation to Plaintiff, in violation of §10(b) of the Securities Exchange Act of 1934, 15 U.S.C. §78j(b), and Rule 10b-5 promulgated thereunder.

75.     As a direct result of Defendant Lazoka and Gerety's securities fraud, Plaintiff have been injured in an amount to be determined at trial, but believed to be no less than $152,525, exclusive of interest and all attorneys' fees and costs associated in prosecuting this action.  As Defendants' actions were intentional and designed to deceive the Plaintiff and the public in general, Plaintiff respectfully request an additional award of $500,000 in punitive damages.

**AS AND FOR A SECOND CLAIM FOR RELIEF
FOR FRAUD AND FRAUD IN THE INDUCEMENT**

76.     Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

77.     In soliciting an investment from Plaintiff, Defendants misrepresented to Plaintiff numerous facts thereon.

78.     The material misrepresentations and omissions by the Defendants described above, on which Plaintiff relied to their detriment, were fraudulent and made with the intent to mislead Plaintiff and induce it into investing.

79.     At the time they solicited the investment from Plaintiff, Defendants knew that the representations were false.

80.     Plaintiff relied upon Defendants' misrepresentations.

81.     As a result of Defendants' improper conduct, Plaintiff have been damaged in an amount to be determined at trial, but no less than $152,525, exclusive of interest and all attorneys' fees and costs associated in prosecuting this action.  As Defendants' actions were intentional and

designed to deceive the Plaintiff and the public in general, Plaintiff respectfully requests an additional award of $500,000 in punitive damages.

## AS AND FOR A THIRD CLAIM FOR RELIEF
## FOR CONVERSION

82.     Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

83.     Plaintiff invested monies upon Defendants' misrepresentations.

84.     Said monies were invested not in Lazoka but deposited by Gerety in her personal bank account.

85.     As a result of Defendants' improper conduct, Plaintiff has been damaged in an amount to be determined at trial, but no less than $152,525, exclusive of interest and all attorneys' fees and costs associated in prosecuting this action.  As Defendants' actions were intentional and designed to deceive the Plaintiff and the public in general, Plaintiff respectfully requests an additional award of $500,000 in punitive damages.

## AS AND FOR A FOURTH CLAIM FOR RELIEF
## FOR BREACH OF CONTRACT (Pled in the Alternative)

86.     Plaintiff repeats and re-alleges each of the above paragraphs as if fully set forth herein in their entirety.

87.     Lazoka and Plaintiff entered into a valid and binding agreement wherein Plaintiff would enter into a convertible debenture note agreement and common stock agreement from Lazoka, in a monetary amount of $25,000; and in consideration thereof, Lazoka would deliver said countersigned note and shares to Plaintiff.

88.     Plaintiff performed her obligations under the parties' Debt and Equity Securities Agreement by signing the agreement and making the agreed upon payment within 2 business days.

89.     Lazoka breached its obligations under Debt and Equity Securities Agreement by failing and refusing to deliver to Plaintiff the Lazoka countersigned agreement or the equity certificates.

90.     As a direct result of Gerety's breach of contract and Gerety and Cooke's falsifications, Plaintiff have been injured in an amount to be determined at trial, but believed to be no less than $152,525, exclusive of interest and all attorneys' fees and costs associated in prosecuting this action.

### AS AND FOR A FIFTH CLAIM FOR RELIEF AGAINST LAZOKA
### FOR UNJUST ENRICHMENT (Pled in the Alternative)

91.     Plaintiff repeats and re-alleges each of the above paragraphs as if fully set forth herein in their entirety.

92.     In the alternative to Plaintiff's securities fraud and breach of contract claims, Lazoka should be held liable on an unjust enrichment claim.

93.     Plaintiff submitted a $25,000 cash investment for Lazoka's account, for which Plaintiff received no consideration in return.

94.     Despite demand, Lazoka has refused to repay Plaintiff the amount paid.

95.     Lazoka has been enriched at Plaintiff's expense.

96.     It would be against good conscience and equity to permit Lazoka to retain the benefits of Plaintiff's monies without reimbursement.

97.     As a result of the foregoing, Plaintiff have been damaged in an amount to be determined at trial.

## AS AND FOR A SIXTH CLAIM FOR RELIEF AGAINST
## LAZOKA AND GERETY
## <u>FOR UNJUST ENRICHMENT</u>

98.     Plaintiff repeat and re-allege each of the above paragraphs as if fully set forth herein in their entirety.

99.     Upon information and belief, monies paid by Plaintiff in exchange for Lazoka convertible debt and common equity were diverted to Gerety and Lazoka, for their own use and to the detriment of Plaintiff.

100.    Lazoka and Gerety have each been enriched at Plaintiff's expense.

101.    It would be against good conscience and equity to permit Lazoka and Gerety to retain the benefits of Plaintiff' monies without reimbursement.

102.    As a result of the foregoing, Plaintiff have been damaged in an amount to be determined at trial.

## AS AND FOR A SEVENTH CLAIM FOR RELIEF
## <u>FOR BREACH OF FIDUCIARY DUTY</u>

103.    Plaintiff repeats and realleges the above paragraphs as though fully set forth herein.

104.    Defendants owed Plaintiff a fiduciary duty.

105.    Defendants breached their duty by, among other things, making material misrepresentations of fact.

106.    As a result of Defendants' breaches of their fiduciary duties, Plaintiff has incurred damages in an amount to be determined at trial, no less than $152,525, exclusive of interest and all attorneys' fees and costs associated in prosecuting this action.  As Defendants' actions were intentional and designed to deceive the Plaintiff and the public in general, Plaintiff respectfully requests an additional award of $500,000 in punitive damages.

**WHEREFORE**, Plaintiff respectfully requests the relief sought herein, together with any other relief that the Court deems just and proper.

DATED:        New York, New York
              March 31, 2021

                                        THE ROTH LAW FIRM, PLLC


                                        By:＿＿s/ Richard A. Roth＿＿＿＿＿＿
                                               Richard A. Roth
                                        295 Madison Avenue, 22nd Fl.
                                        New York, New York 10017
                                        Tel: 212-542-8882
                                        Fax: 212-542-8883
                                        *Attorneys for Plaintiff*